FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 13, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CARMEN N., | NO: 1:17-CV-03043-FVS |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary

judgment. ECF Nos. 12 and 16. This matter was submitted for consideration

without oral argument. The plaintiff is represented by Attorney D. James Tree.

The defendant is represented by Special Assistant United States Attorney L.

Jamala Edwards. The Court has reviewed the administrative record and the

parties' completed briefing and is fully informed. For the reasons discussed below,

ORDER ~ 1

the court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 16, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 12.

## JURISDICTION

Plaintiff Carmen Navarro protectively filed for supplemental security income and disability insurance benefits on August 7, 2012, alleging an onset date of November 10, 2011. Tr. 197-210. Benefits were denied initially (Tr. 111-18) and upon reconsideration (Tr. 123-34). Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Virginia M. Robinson on August 1, 2014. Tr. 46-68. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits (Tr. 19-43) and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only the most pertinent facts are summarized here.

Carmen Navarro ("Plaintiff") was 46 years old at the time of the hearing. *See* Tr. 28. She received her GED in 2000. Tr. 233. Plaintiff lives with her adult son and daughter, daughter's boyfriend, and daughter's four children. Tr. 51-54. Plaintiff has work history as a receptionist, agricultural produce sorter, order clerk,

and receiving clerk. Tr. 63. In July 2006, Plaintiff injured her right shoulder while working as a shipping clerk. Tr. 292. Plaintiff testified that she received "one" worker's compensation payment, and the record indicates her claim was closed in November 2007. Tr. 54, 298-99. Subsequent attempts by Plaintiff to reopen her claim in 2009 and 2012 were denied due to lack of objective evidence. Tr. 312-13, 333, 337, 342. As noted by the ALJ, Plaintiff also continued working from 2006-2009, and earned less than gainful income from 2010-2011, before she stopped working in June 2012, allegedly due to her limitations. Tr. 29, 214, 232.

Plaintiff had surgery on her right shoulder in March 2007, but testified that despite having surgery, her right shoulder is "getting worse and worse" and she is losing strength in her right arm and hand. Tr. 58, 294. Plaintiff also had carpal tunnel surgery on the left side 2013; which she also testified "didn't work out" because she still doesn't have "much strength" in her left hand. Tr. 59, 415-17. Plaintiff testified that she has urinary incontinence; pain in her feet; pain in her back, neck, and shoulders; pinched nerves in her back; and numbness and tingling in her "whole body." Tr. 55-60. She reported she has to lie down three or four times a day for five or ten minutes; and will suddenly drop objects because she doesn't have the strength to hold them with her fingers and hands. Tr. 57-58, 61. Plaintiff alleges disability due to right shoulder injury and "physical limitations." *See* Tr. 115, 123.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The

party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that she is not only unable to do his previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 10, 2011, the alleged onset date. Tr. 24. At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, right supraspinatus tendinosis and rotator cuff injury (status/post-surgical repair), and obesity. Tr. 24. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 27. The ALJ then found that Plaintiff has the RFC

> to lift and carry ten pounds frequently and twenty pounds occasionally. She can stand and/or walk for six hours in an eight-hour workday, and can sit for six hours in the same period. She cannot climb ladders, rope, or scaffolding. She can frequently climb ramps or stairs. She can occasionally stoop or crawl. She can occasionally reach overhead with her right upper extremity. She can frequently handle, finger, feel, or reach in all other directions with her right upper extremity. She should avoid concentrated exposure to vibration, extreme cold, or hazards.

Tr. 27. At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a receptionist and an order clerk. Tr. 36. In the alternative, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can also perform, such as counter clerk, furniture rental consultant, and conveyor line bakery worker. Tr. 36-37. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from November 10, 2011, through the date of the decision. Tr. 37.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ improperly discredited Plaintiff's symptom claims; and

2. Whether the ALJ properly weighed the medical opinion evidence.

## DISCUSSION

**A. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's "statements concerning the debilitating intensity, persistence and limiting effects of these symptoms are not credible." Tr. 28. Plaintiff argues the ALJ failed to provide specific, clear, and convincing reasons for discrediting Plaintiff's symptom testimony. ECF No. 12 at 17-20. As an initial matter, the Court agrees with Plaintiff that the ALJ erroneously found her "primary physical impairments have not prevented gainful employment" and "[c]ontrary to [Plaintiff's] hearing testimony, her treatment records and work history indicate considerable improvement with her remote right shoulder surgery." ECF No. 12 at 17-18 (citing Tr. 28). The evidence cited by the ALJ in support of this finding is entirely comprised of treatment notes from 2006-2007, and employment records from 2007-2011. Tr. 28-29. However, Plaintiff's alleged disability beginning on November 10, 2011. Tr. 22. Plaintiff's work history and activities prior to the alleged onset date are of limited probative value.

*See, e.g.*, *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."). Thus, discounting plaintiff's credibility on this basis is not a clear and convincing reason to discount all of her statements regarding her limitations. However, the error is harmless because, as discussed below, the ALJ gave additional reasons, supported by substantial evidence, for discrediting Plaintiff's symptom complaints. *See Carmickle*, 533 F.3d at 1162-63.

First, and most notably, the ALJ found the "evidence of record documents exaggeration of [Plaintiff's] symptoms and limitations, in a manner that severely undermines her credibility regarding both her symptoms and physical presentation." Tr. 29. The tendency to exaggerate is a permissible reason for discounting a Plaintiff's credibility. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (the ALJ appropriately considered Plaintiff's tendency to exaggerate when assessing Plaintiff's credibility, which was shown in a doctor's observation that Plaintiff was uncooperative during cognitive testing but was "much better" when giving reasons for being unable to work); *see also Thomas*, 278 F. 3d at 959 (An ALJ may properly rely on a claimant's efforts to impede accurate testing of a claimant's limitations when finding a claimant less than credible). Similarly, evidence of motivation to obtain social security benefits may be considered in making a credibility determination. *See Matney v. Sullivan*, 981

F.2d 1016, 1020 (9th Cir. 1992).  Here, the ALJ relied on extensive treatment

records that noted Plaintiff was exaggerating symptoms.  Tr. 29-32.  For example,

in February 2010, Plaintiff was referred for a physical examination regarding the

possibility of reopening a workers compensation claim, at which time she reported

"pain going from her occiput posteriorly down around her scapula, down the

posterior arm and posterior forearm all the way to the dorsal hand, and then a line

drawn from the anterior neck all the way down the front part of the shoulder, arm,

forearm and hand, and then she circles all of the modalities including burning,

numbness, stabbing, aching, and pins-and-needles.  She says all of those are there

all of the time."  Tr. 29 (citing Tr. 302).  Dr. Kopp, the medical examiner, noted

that Plaintiff's "presentation on the physical examination is one of pain behavior

and lack of cooperation.  [He] wish[ed] to emphasize that this is willful

misrepresentation not a 'pain disorder,'" as shown by: "cogwheeling giving way in

virtually [all] muscle groups and lack of any effort with the right upper extremity is

not physiologically likely;" inconsistent grip strength and sensory exam testing that

is not physiologically explainable; inconsistent range of motion testing "when her

attention was distracted;" and significantly less range of motion than the previous

testing in 2007, despite no intervening history of injury, which is not

"physiologically explainable."  Tr. 29-30, 310-11.  Dr. Kopp concluded that the

objective evidence, and Plaintiff "fabricating her symptoms" did not support a

reopening of her worker's compensation claim.  Tr. 30, 312.

Moreover, in September 2012, despite claiming she was unable to use her

right upper extremity, circumferential measurements of Plaintiff's forearms and

upper arms were larger on the involved right side; but, as noted by the examining

providers, "[o]ne who has no use of an extremity is bound to have some degree of

muscle atrophy.  She had none on this examination."  Tr. 30, 331.  The medical

examiners again found that Plaintiff's shoulder condition had not "objectively

worsened" since the initial injury, and reported a sensory examination that was

"clearly nonanatomical, suggesting fabrication."  Tr. 332.  Finally, in January

2014, as noted by the ALJ, Plaintiff's treating physician noted Plaintiff "has a pain

affect and is inappropriate in her response to questions and operation during the

exam," and explicitly noted Plaintiff "has secondary gains going on and is not

appropriate in her behavior today.  I do not believe that her surgery was

ineffective.… I will not do any further surgery on her.  She is discharged from

care."  Tr. 32, 410.

In a footnote of her opening brief, Plaintiff notes that the ALJ relies, at least

in part, on medical examinations rendered before the alleged onset date.  ECF No.

12 at 18 n.10.  As noted above, evidence that predates the alleged onset date of

disability, and is therefore generally less relevant in considering Plaintiff's

subjective testimony.  *See Carmickle*, 533 F.3d at 1165.  In this case, however, the Court finds this evidence is more significant in light of ongoing pattern of exaggeration of symptoms by Plaintiff both before and after the alleged onset date, as discussed in detail above.  Finally, Plaintiff notes that the record includes reports from treating providers who never found symptom magnification despite "the opportunity to observe Plaintiff on multiple occasions."  ECF No. 12 at 18 n.10.  However, regardless of evidence that could be considered favorable to Plaintiff, ongoing evidence that she exaggerated her symptoms, and at least one finding of secondary gain motivation, was a clear and convincing reason to reject her symptom testimony.

Second, the ALJ found Plaintiff's "activities since her alleged onset date are inconsistent with her reported limitations, to a degree that further compromises her credibility regarding the severity of her limitations."  Tr. 32.  It is well-settled that a claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities…does not in any way detract from her credibility as to her overall disability.").  Regardless, as in this case, even where activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating

impairment." *Molina*, 674 F.3d at 1113.  Here, Plaintiff testified that she has back pain and numbness that radiates into her shoulders, arms, and legs; she frequently drops objects due to numbness, weakness and tingling in both of her upper extremities; the pinched nerves are causing her "whole body to just not work;" and she lies down three times a day for at least five to ten minutes at a time.  Tr. 28, 56-57, 60-61.  In an August 2012 function report, Plaintiff reported that she was unable to sit or stand for more than ten minutes.  Tr. 28, 252, 256.  However, as noted by the ALJ, Plaintiff reported that she operated vehicles as her primary form of transportation; regularly visited grocery stores where she would shop for up to an hour; and her regular activities included watching her grandchildren.  Tr. 32, 252-54.  Moreover, in July 2012, Plaintiff reported that she used a stationary bike for exercise that "has handles to hold onto will pump her arms that way."  Tr. 334. And notably, while it does not qualify as gainful activity, Plaintiff worked for a temporary services agency and an agricultural firm in 2013, and the same temporary services agency in 2014.  Tr. 32, 223-24.

Plaintiff generally argues that the record does not "indicate" that Plaintiff's ability to drive, shop, or watch her grandchildren "requires any activity inconsistent with her symptom testimony."  ECF No. 12 at 19.  However, Plaintiff's extensive daily activities outlined above, including her periods of employment in 2013 and 2014; were reasonably considered by the ALJ as

inconsistent with Plaintiff's complaints of entirely disabling limitations. *See*

*Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one

interpretation, the ALJ's conclusion must be upheld); *see also Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995) ("[t]he ALJ is responsible for determining

credibility"). This was a clear and convincing reason to find Plaintiff not credible.

The final reason identified and challenged by Plaintiff in her opening brief,[1]

was the ALJ's finding that Plaintiff's "objective studies indicate a lack of

neurological impairments and minimal musculoskeletal issues." Tr. 31. An ALJ

may not discredit a claimant's pain testimony and deny benefits solely because the

degree of pain alleged is not supported by objective medical evidence. *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341,

346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a

relevant factor in determining the severity of a claimant's pain and its disabling

effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2). Here, the ALJ set

---

[1] As noted by Defendant, the ALJ additionally supported her adverse credibility

finding by citing evidence of lack of treatment, conservative treatment, and

inconsistencies in Plaintiff's reporting of symptoms. ECF No. 16 at 12; Tr. 29-31.

However, the Court declines to address these issues as they were not raised with

specificity in Plaintiff's opening brief. *See Carmickle*, 533 F.3d at 1161 n.2.

out, in detail, the medical evidence contradicting Plaintiff's claims of disabling

limitations during the relevant adjudicatory period, including: no report of low

back pain until January 2013, at which time Plaintiff had a negative review of

symptoms aside from the new complaint of back pain, and "did not appear to be in

pain" (Tr. 461-62); normal x-rays of lumbar spine in May 2013, and MRI of right

shoulder found mild supraspinatus tendinosis with no evidence of rotator cuff tear

(Tr. 479-80); a July 2013 a nerve conduction study of both upper extremities found

no evidence of neuropathy, cervical radiculopathy, or carpal tunnel syndrome (Tr.

438); a July 2013 examination found normal sensation, negative Phalen signs, and

normal range of motion in Plaintiff's shoulders, wrists, elbows, and fingers (Tr.

437); in September 2013 Plaintiff denied being in pain and did not appear to be in

pain (Tr. 446-47); in a routine January 2014 examination Plaintiff was noted to be

"doing well physically" (Tr. 471); a February 2014 MRI of the thoracic spine was

normal (Tr. 487); and a February 2014 MRI of cervical spine was normal except

for "slight" bulges at C5-6 and C6-7 (Tr. 485-86). Tr. 31-32. These

inconsistencies between Plaintiff's alleged limitations and medical evidence

provide a permissible reason for discounting Plaintiff's credibility. *See Thomas*,

278 F.3d at 958-59 ("If the ALJ finds that the claimant's testimony as to the

severity of her pain and impairments is unreliable, the ALJ must make a credibility

determination … [t]he ALJ may consider testimony from physicians and third

parties concerning the nature, severity and effect of the symptoms of which the claimant complains.").

Plaintiff generally argues that the record does not support the ALJ's finding of "minimal musculoskeletal issues," and cites treatment notes finding decreased range of motion of Plaintiff's back and shoulder, and positive Tinsel and Phalen signs. ECF No. 12 at 18 (citing Tr. 335, 366, 419, 422, 511, 514, 544). Plaintiff further notes that the February 2014 MRI cited by the ALJ also found "moderate canal stenosis and facet arthropathy" and a bulging disc. *Id*. (citing Tr. 485-86, 549). However, as noted above, the ALJ specifically considered this evidence; and regardless of evidence that could be interpreted more favorably to the Plaintiff, the ALJ properly relied on evidence from the overall record to support the finding that Plaintiff's claimed limitations were not consistent with the longitudinal medial evidence. "[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch*, 400 F.3d at 679. For all of these reasons, the lack of corroboration of Plaintiff's testimony in the record as a whole was properly considered by the ALJ.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**B. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001)(citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester,* 81 F.3d at 830–831). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009)(quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p

(Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a).

"Other sources" include nurse practitioners, physician assistants, therapists,

teachers, social workers, and other non-medical sources.  20 C.F.R. §§

404.1513(d), 416.913(d).  The ALJ need only provide "germane reasons" for

disregarding an "other source" opinion.[2]  *Molina*, 674 F.3d at 1111.  However, the

ALJ is required to "consider observations by nonmedical sources as to how an

impairment affects a claimant's ability to work."  *Sprague v. Bowen,* 812 F.2d

1226, 1232 (9th Cir. 1987).

      Plaintiff argues the ALJ erroneously considered the opinion of treating

physician Robert L. Whitson, D.O.; and the opinion of treating nurse practitioner

Annette McClendon, ARNP.[3]  ECF No. 12 at 8-15.

---

[2] Social Security regulations regarding the evaluation of opinion evidence were

amended effective March 27, 2017.  However, the Court applies the law in effect at

the time of the ALJ's decision on November 25, 2014.

[3] Plaintiff generally argues, without citation to legal authority, that the ALJ

improperly granted "substantial weight" to the independent medical evaluations

conducted "for the purposes of Plaintiff's worker's compensation claim" because

they "only accounted for limitations resulting from her shoulder impairment."

ECF No. 12 at 14-15 9 (citing Tr. 289-90, 300-13, 323-33).  However, Plaintiff

*1. Dr. Robert L. Whitson*

In November 2012, treating physician Dr. Whitson completed a physical functional evaluation of Plaintiff.  Tr. 365-67.  Dr. Whitson opined that Plaintiff was "severely limited," which is defined as "unable to meet the demands of sedentary work," for the period of one year.  Tr. 367.  The ALJ granted Dr. Whitson's opinion "minimal to no weight."  Tr. 33-34.  Because his opinion was contradicted by Dr. Dennis Koukol and Dr. Elizabeth St. Louis (Tr. 75-77, 94-96), the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Whitson's opinion.  *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Whitson's "records do not include any detailed examination of [Plaintiff], whether in November 2012 or prior care.  His only documented musculoskeletal finding prior to November 2012 was 'good mobility'

_____

doesn't specifically challenge any of specific reasons given by the ALJ for granting those opinions significant weight.  *See Carmickle*, 533 F.3d at 1161 n.2.  Moreover, the ALJ specifically considered the opinions only as to Plaintiff's claimed right upper extremity impairments, and gave "significant weight to another medical opinion that offer[s] a greater degree of detail regarding [Plaintiff's] occupational abilities."  Tr. 33.  The Court is unable to discern any error in the ALJ's consideration of these opinions.

in March 2011." Tr. 33 (citing Tr. 362, 378-87). Plaintiff argues the ALJ

"improperly disregarded that numerous physical examinations revealed the same

findings as those of Dr. Whitson, including positive Tinel and Phalen signs and

reduced shoulder range of motion." ECF No. 12 at 11. However, regardless of

consistency with the overall record, "discrepancy" between a treating provider's

clinical notes and that provider's medical opinion is an appropriate reason for the

ALJ to not rely on that opinion regarding the claimant's limitations. *See Bayliss*,

427 F.3d at 1216. Here, in the section of Dr. Whitson's evaluation indicating he

should "list all laboratory, imaging, range of motion, and other diagnostic test

results," *and attach* those reports to the opinion; Dr. Whitson merely wrote that

Plaintiff's right shoulder range of motion was limited and painful, and she had

positive Phalen and Tinel signs in her right wrist. Tr. 366. Dr. Whitson did not

attach any examination findings or test results to his opinion. Moreover, as noted

by the ALJ, a review of Dr. Whitson's clinical notes regarding Plaintiff's

musculoskeletal system reveals only a single finding in March 2011 that Plaintiff

had "good mobility." Tr. 33, 387. Finally, the record supports the ALJ's finding

that Dr. Whitson's "records do not include a detailed examination" of Plaintiff in

November 2012 "or in his prior care;" and her last visit to Dr. Whitson in the

record was in 2011, well before the opined limitations in November 2012. *See*

*Bray*, 554 F.3d at 1228 (ALJ need not accept the opinion of any physician,

including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings); 20 C.F.R. § 416.927 (ALJ may consider the length and nature of a treatment relationship in evaluating a medical opinion). For all of these reasons, the inconsistency between the Dr. Whitson's minimal treatment notes, and the restrictive limitations he opined in November 2012, was a specific and legitimate reason to reject his opinion.

Second, the ALJ noted that "the basis for" Dr. Whitson's "opinion of physical disability" was Plaintiff's "displayed 90 degrees of abduction in her right shoulder, positive Tinel and Phalen signs in her right wrist, and her report that her shoulder pain radiated into her right neck. As noted in this decision, [Plaintiff] has minimal credibility regarding the nature and severity of her impairments, symptoms, and limitations. She is not reliable in regards to her physical displays." Tr. 33-34, 366. An ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted as incredible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Plaintiff argues that Dr. Whitson is in the "best position to assess the reliability" of her "physical displays" as her treatment provider; and contends that Dr. Whitson relied "primarily upon his own clinical findings" of reduced range of motion and positive Tinel and Phalen signs, as opposed to basing his opinion on Plaintiff's self-reports. ECF No. 12 at 10-12 (citing Tr. 366). Plaintiff further contends that Dr. Whitson

only noted "one reported symptom," which was the radiation of pain to Plaintiff's neck. ECF No. 12 at 11 (citing Tr. 366). However, the Court's independent review of Dr. Whitson's opinion indicates that he relied on multiple reports of pain during "testing" he performed on Plaintiff, including: pain during range of motion testing of her shoulder; pain during flexion and internal rotation; and right wrist pain during testing that "radiates" to her neck. Tr. 366. Dr. Whitson also specifically noted that "pain limits function." Tr. 366. Moreover, neither Dr. Whitson's opinion, nor his own limited treatment records, indicate that Dr. Whitson conducted or considered objective tests such as MRI, x-ray, or nerve conduction testing. This is particularly noteworthy with regard to the ALJ's reasoning here, because, as discussed in detail above, multiple examining and treating providers found Plaintiff exaggerated both her pain and limited range of motion. Thus, it was reasonable for the ALJ to conclude that Dr. Whitson's opinion that was largely based on Plaintiff's reports of pain and "physical displays" including limited range of motion, which were properly discounted as incredible. This was a specific and legitimate reason to reject Dr. Gomes' opinion.

Third, the ALJ noted inconsistency between Dr. Whitson's opinion, and the medical imaging and "anatomical examination" evidence. Tr. 34. ALJ may discredit a physician's opinion that is unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190,

1195 (9th Cir. 2004). In support of this finding, the ALJ cited a July 2013 nerve conduction study of both upper extremities found no evidence of neuropathy, cervical radiculopathy, or carpal tunnel syndrome; and Plaintiff displayed normal range of motion in her shoulders, wrists, elbows, and fingers, had normal sensation, and negative Phalen signs. Tr. 34, 437-38. Plaintiff again contends that the ALJ "improperly disregarded" treatment notes finding decreased range of motion of Plaintiff's back and shoulder, and positive Tinsel and Phalen signs; and February 2014 MRI results indicating "moderate canal stenosis and facet arthropathy," and a bulging disc "that was not present in earlier imaging." ECF No. 12 at 18 (citing Tr. 335, 366, 419, 422, 485-86, 511, 514, 544). However, despite her argument to the contrary, the ALJ did consider the record as a whole, including the evidence cited by Plaintiff; and the ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews*, 53 F.3d at 1039. Moreover, in addition to the normal nerve conduction study and normal range of motion testing in 2013, the ALJ relied on imaging and examination evidence from the overall record that is inconsistent with the severity of Dr. Whitson's opinion, including: of normal x-rays of Plaintiff's lumbar spine in May 2013; mild supraspinatus tendinosis with no evidence of rotator cuff tear in May 2013 x-rays of Plaintiff's right shoulder (Tr. 479-80); reports in 2013 that Plaintiff was not in pain and did not appear to be in pain (Tr. 446-47); a January 2014

examination noting Plaintiff was "doing well physically" (Tr. 471); and a normal February 2014 MRI of the thoracic spine (Tr. 487). Thus, regardless of evidence that could be interpreted more favorably to Plaintiff, it was reasonable for the ALJ to grant more weight to other medical opinions, "whose assessments are consistent with" Plaintiff's "medical imaging, and anatomical examination findings." *See also Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). For all of these reasons, the lack of support in the overall record was a specific and legitimate reason for the ALJ to reject Dr. Whitson's opinion.

Fourth, and finally, the ALJ again notes that Plaintiff "maintained gainful employment for a prolonged period following the alleged onset of impairment in her cervical spine and right upper extremity, even without any documented or reported primary medical care." Tr. 34. However, as discussed above, while Plaintiff did maintain employment for years after her "alleged onset of impairment" in 2006; her alleged onset date of disability in this case is November 2011, after which the record does not include substantial gainful employment. *See* Tr. 222-24. Plaintiff's work history and activities prior to the alleged onset date are of limited probative value. *See*, *e.g.*, *Carmickle*, 533 F.3d at 1165; *Swanson*, 763 F.2d at 1065 (9th Cir. 1985). Thus, to the extent the ALJ considered Plaintiff's work history prior to November 2011, this was not a specific and legitimate reason

to discount Dr. Whitson's opinion.  However, the error is harmless because, as discussed above, the ALJ gave additional reasons, supported by substantial evidence, for granting Dr. Whitson's opinion minimal to no weight.  *See Carmickle*, 533 F.3d at 1162-63.

### 2.  Annette McClendon, ARNP

In October 2013, Annette McClendon, ARNP, completed a physical functional evaluation of Plaintiff.  Tr. 403-05.  Ms. McClendon opined that due to "bilateral carpal tunnel syndrome, urinary incontinence, chronic pain syndrome, right shoulder impairment, and a history of clinical depression" (Tr. 34); Plaintiff would be "severely limited" for an undisclosed period of time "depending on [the] date of carpal tunnel repair."  Tr. 405.  The ALJ accorded "minimal to no weight" to Ms. McClendon's opinion.  Tr. 34.  Because Ms. McClendon is an "other source," the ALJ is required to give germane reasons for rejecting her opinion.

First, the ALJ found that Ms. McClendon's opinion was "based solely on [Plaintiff's] subjective reporting of symptoms and limitations.  For reasons discussed earlier in [the] decision, [the ALJ found Plaintiff] has limited credibility regarding the nature and severity of her symptoms … and limitations."  Tr. 34.  An ALJ may reject an opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted as incredible.  *Tommasetti*, 533 F.3d at 1041.  Plaintiff argues the ALJ "erroneously found" Ms. McClendon's opinion was

based solely on Plaintiff's reported symptoms, because her opinion "explicitly states" that she "considered MRI results and other treatment records in assessing [Plaintiff's] limitations." ECF No. 12 at 12-13 (citing Tr. 404). Presumably, Plaintiff is referring to the "objective" section of Ms. McClendon's opinion that lists a May 2013 MRI of Plaintiff's upper extremities, "reports from Dr. Salazar," carpal tunnel syndrome, and pap smear test results. Tr. 404. However, despite the instruction that Ms. McClendon "attach reports" to her opinion, the attached documents only include "normal" lumbar spine x-ray results from May 2013. Tr. 406-08. Moreover, as noted in the ALJ's decision, a May 2013 MRI of Plaintiff's right shoulder found only "mild supraspinatus tendinitis, with no evidence of a rotator cuff tear." Tr. 31 (citing Tr. 480). And Plaintiff does not explicitly cite, nor does the Court's independent review of the record reveal, the cited "reports from Dr. Salazar." Most notably, Ms. McClendon failed to discuss how these purported objective findings support her finding that Plaintiff would be severely limited such that she was unable to meet the demands of sedentary work. Tr. 404-05. Instead, without reference to examination findings, Ms. McClendon notes that Plaintiff is unable to lift anything over five pounds, cannot write for longer than 30 seconds due to carpal tunnel and chronic back pain, and cannot sit for longer than ten minutes due to urinary incontinence and back pain. Tr. 404. For all of these reasons, it was reasonable for the ALJ to conclude Ms. McClendon's opinion was

based in large part on Plaintiff's properly discounted subjective complaints. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). This was a germane reason to reject her opinion.

Second, the ALJ noted that Plaintiff has "routinely denied having incontinence in treatment settings;" has no documented mental health treatment and displayed "benign psychological signs;" and "her nerve conduction studies, longitudinal examination findings, and recent work activity[4] indicate a lack of manipulative limitation in either upper extremity." Tr. 34. ALJ may discredit a physician's opinion that is unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195. Plaintiff argues that the ALJ "erroneously presumes that imaging results would necessarily reflect worsening of" Plaintiff's symptoms; and cites evidence of positive Tinel and Phalen tests, cervical degenerative disc disease, and carpal tunnel surgery. ECF No. 12 at 14

---

[4] An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). However, the Court declines to address this issue as it was not raised with specificity in Plaintiff's opening brief. Carmickle, 533 F.3d at 1161 n.2.

(citing Tr. 366, 419, 422, 464, 485-86, 493-94).  However, as discussed in detail above, the ALJ cited evidence of normal and benign x-ray results of lumbar spine and right shoulder in 2013; normal nerve conduction study in 2013; negative Phalen signs and normal range of motion in 2013; reports of not being in pain and not appearing to be in pain in 2013; routine physical examination and noted to be "doing well physically" in 2014; normal thoracic spine x-ray in 2014; and normal MRI of cervical spine in 2014 aside from "slight" bulges at C5-6 and C6-7.  Tr. 437-38, 446-47, 461-62, 471, 479-80, 487, 485-86.  Thus, regardless of evidence that could be interpreted more favorably to Plaintiff, it was reasonable for the ALJ to find Ms. McClendon's opinion was unsupported by the overall record. *Andrews*, 53 F.3d at 1039 (ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities"); *see also Burch*, 400 F.3d at 679.  This was a germane reason for the ALJ to reject Ms. McClendon's opinion.

Finally, the ALJ noted that Plaintiff's "longstanding right shoulder impairment has not prevented sustained periods of fulltime employment, and her imaging studies do not indicate any worsening of this impairment since her periods of gainful employment."  Tr. 34.  However, as discussed in detail above, Plaintiff's work history and activities prior to the alleged onset date are of limited probative value.  *See, e.g.*, *Carmickle*, 533 F.3d at 1165; *Swanson*, 763 F.2d at 1065 (9th Cir. 1985).  Thus, to the extent the ALJ considered Plaintiff's work history prior to the

alleged onset date of disability, this was not a germane reason to discount Ms.

McClendon's opinion. However, the error is harmless because, as discussed

below, the ALJ gave additional germane reasons, supported by substantial

evidence, for granting Ms. McClendon's opinion minimal to no weight. *See*

*Carmickle*, 533 F.3d at 1162-63.

   3. *Dennis Koukol, M.D. and Elizabeth St. Louis, M.D.*

   In October 2012 and February 2013, Dr. Dennis Koukol and Dr. Elizabeth

St. Louis, opined, respectively, that Plaintiff was limited to "no overhead reaching;

occasional front and lateral; [and] limited handling, fingering, and feeling to

occasional." *See* Tr. 77, 96. The ALJ gave "some weight" to Dr. Koukol's

opinion and "significant weight" to Dr. St. Louis' opinion. Tr. 35. However, the

ALJ specifically found that Plaintiff's "work history, imaging studies, longitudinal

examination findings, and activities since her alleged onset date indicate a general

lack of significant manipulative limitations." Tr. 35. Plaintiff argues that ALJ

improperly rejected manipulative limitations opined by state agency physicians Dr.

Koukol and Dr. St. Louis. ECF No. 12 at 15-16. Again, as discussed above, the

ALJ erred to the extent she considered Plaintiff's work history *before* her alleged

onset date. *See Carmickle*, 533 F.3d at 1165. However, the error is harmless

because the ALJ gave additional reasons, supported by substantial evidence, for

not adopting the state agency physicians' opinions regarding Plaintiff's

manipulative and reaching limitations. *See Carmickle*, 533 F.3d at 1162-63.

Specifically, the ALJ properly discredited these physicians' opinions because they

were unsupported by the record as a whole, and inconsistent with Plaintiff's

activities since her alleged onset date. *Batson*, 359 F.3d at 1195; *Morgan v.*

*Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). In support of

this finding, the ALJ set out, in detail, evidence of imaging studies and

"longitudinal examination findings," including: a July 2013 nerve conduction

study in 2013 finding no evidence of neuropathy, cervical radiculopathy, or carpal

tunnel syndrome (Tr. 438); a July 2013 finding of normal sensation and normal

range of motion in Plaintiff's shoulders, wrists, elbows, and fingers (Tr. 437);

April 2014 findings of full grasp strength and normal range of motion in her wrists

and hands (Tr. 491); June 2014 findings of normal strength throughout her body

(Tr. 560); and routine denials by Plaintiff of numbness, weakness, or limited range

of motion (Tr. 450, 452, 458, 468, 493). Tr. 35. Plaintiff argues the ALJ erred by

relying on this evidence while "disregarding" examinations that found positive

Tinel and Phalen signs and Plaintiff's report of numbness and tingling. ECF No.

12 at 16. However, despite this evidence that could be considered favorable to

Plaintiff, it was reasonable for the ALJ to find that the manipulative limitations

assessed by Dr. Koukol and Dr. St. Louis were not supported by the overall

medical record. *See Burch*, 400 F.3d at 679. Thus, the Court finds no error in the

ALJ's consideration of the manipulative limitations opined by Dr. Koukol and Dr. St. Louis; and the ultimate conclusion that Plaintiff "could perform jobs in significant numbers even if limited to occasionally handling, fingering, feeling, and reaching with the right upper extremity (in addition to her other limitation at a light work level)." [5] Tr. 35.

---

[5] Plaintiff additionally argues that the hypothetical posed to the vocational expert failed to account for Dr. Koukol's and Dr. St. Louis' opinion that Plaintiff was limited to no overhead reaching with the right upper extremity. ECF No. 12 at 16-17. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all the claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). However, the ALJ is "free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Osenbrock*, 240 F.3d at 1164-65. As discussed herein, the ALJ specifically considered the manipulative limitations opined by the state agency physicians, including overhead reaching; and assessed an RFC, and resulting hypothetical, limiting Plaintiff to occasional overhead

**CONCLUSION**

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom testimony, and properly weighed the medical opinion evidence. After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** June 13, 2018.

                             *s/Fred Van Sickle*
                                Fred Van Sickle
                    Senior United States District Judge

---

reaching with the right upper extremity, as supported by substantial evidence in the record. Thus, the ALJ properly relied on testimony by the vocational expert at step four and five.